# Burke *v.* Blan.

### Application for Mandamus to State Auditor.

1. *Printer's fee for advertising sales of lands for delinquent taxes; when payable out of State treasury.*—Under the provisions of the act approved February 12th, 1879, amending section 439 of the Code (Sess. Acts 1878-9, p. 21), the printer's fee for advertising the sale of lands for delinquent taxes must be paid out of the State treasury, on the auditor's warrant in his favor, *only* when the State became the purchaser at the tax-sale, *or* when the fee has been collected and paid into the treasury.

2. *Same, for advertising notices to delinquent tax-payers.*—Under the provisions of the act approved February 12th, 1879, providing for the sale of lands for delinquent taxes (Sess. Acts 1878-9, pp. 1-7, §§ 3, 4, 10), the printer's fee for advertising notices to delinquent tax-payers is required to be ascertained by the judge of probate, and included in the amount for which a decree of sale is rendered, and is made payable out of the proceeds of sale; but, when the State becomes the purchaser, the auditor is not required to draw his warrant on the treasurer in favor of the printer, except on the production of an order by the judge of probate.

APPEAL from the Circuit Court of Montgomery.

Tried before Hon. JOHN P. HUBBARD.

This was an application by petition, by W. J. Blan, for a mandamus directed to M. C. Burke, auditor of public accounts, requiring that officer to draw his warrant on the State treasurer, in favor of the petitioner, for $193, a balance claimed to be due to the petitioner as compensation for printing and publishing, under agreement between him, the tax-collector and the probate judge of Lowndes county, during the year 1884,

7

[Burke v. Blan.]

notices to delinquent tax-payers, and advertisements of the sale of lands for delinquent taxes. The petition was filed on the 22d June, 1885, and was verified by the affidavit of the petitioner. The amount of the petitioner's original account, as presented to Auditor Carmichael, the predecessor of said Burke, was $893, being $471.50 for the publication of notices to delinquents, and $421.50 for advertisement of sales of land for delinquent taxes under decrees of the probate judge. The account was audited by said Carmichael, and $700 being allowed, he drew his warrant for that sum in favor of the petitioner. The object of the present proceeding was to compel said Burke, as auditor, to again audit the account, and allow the balance of the claim, $193. The defendant filed an answer to the petition, in which he stated the facts on which he based his refusal to draw his warrant for the sum claimed. It was admitted on the hearing, as the bill of exceptions states, that the notices published by the petitioner were 237 at the first insertion, 232 at the second, and 223 at the third; that the number of parcels of land advertised for sale, under decrees of the judge of probate, were 212 at the first insertion, 206 at the second, and 205 at the third; "that the State bought in, of the lands so advertised, only 175 parcels; that no certificates of the sale and purchase of any other parcels by the State have ever been on file in the office of the defendant as auditor, or were ever made by the tax-collector; and that no money'for the costs of advertising said 175 parcels, or the other lands set out in said advertisement, have ever been paid into the State treasury, or collected by said tax-collector." On the admitted facts, the court granted a peremptory *mandamus*; and this ruling and judgment, to which the defendant duly expected, is now assigned as error.

Thos. N. McClellan, Attorney-General, for appellant.

Troy, Tompkins & London, *contra*.

CLOPTON, J.—Section 439 of the Code required the tax-collector to charge and collect the price of advertising land for sale for delinquent taxes. Under this statute, the State, unless it became the purchaser of the land, was under no liability or obligation to pay the price of advertising. The publisher was paid by the collector. The section was amended by the act of February 12th, 1879. The amendatory act provides: "The collector must charge and collect, in addition to fees, forfeitures and costs, on each tract, the price for advertising the same for sale, and shall pay over the amount collected for advertising such sales into the treasury of the State; and the auditor of the

State shall audit the account of such publisher for such advertisement, and where the State has become the purchaser of lands at such tax-sale, and draw his warrant in favor of such publisher on the treasurer of the State, for the amount he may find to be lawfully due such publisher; and the treasurer shall pay the same; and the provisions of this section shall apply to all cases where such tax-collector has heretofore collected the price of advertising as aforesaid, and has not paid it over to such publisher."—*Acts* 1878–9, 21. It is contended for petitioner, that the purpose and operation of the amendatory act are, to impose upon the State an unconditional liability to pay the price of advertising all the lands for sale, notwithstanding the collector may fail to collect and pay the money into the treasury, and the State may not be the purchaser.

It will be conceded, that the State, by requiring the collector to pay the money into the treasury, deprives him of authority to pay the publisher the price of advertising the lands. The last clause imposes the same duty as to the price of advertising theretofore collected, and not paid to the publisher. A construction of the statute, which operates to impose a liability on the State not previously existing, should not be adopted, unless such liability is expressly declared, or necessarily implied,—the equivalent of a promise or assumption. For reasons deemed sufficient by the General Assembly, direct payment by the collector to the publisher was considered impolitic; and the treasury of the State is constituted the depository of the money collected for the cost of advertising. Having undertaken the reception of the money, and having assumed the duty to ascertain and pay, through the proper officers, the amount which may be found to be lawfully due the publisher, the liability is co-extensive with the duties, but does not extend further than is necessary to complete the performance. The State does not undertake to enforce the payment of the money into the treasury by the collector. The law charges him with the duty, and, on his failure to discharge it, affords the publisher, as the person injured, redress by suit on his official bond.—Code, § 179. From the construction of the statute insisted on, the logical sequence is, that the obligation of the State is tantamount to a guaranty, in favor of the publisher, that the collector shall collect and pay into the treasury the cost of advertising, or, on default, the State will pay such cost. In such case, auditing the account, to ascertain the amount *lawfully* due, would necessarily involve an investigation of the cause of such default,—whether the price of advertising could have been collected by reasonable diligence, or, if collected, whether there is any legal and sufficient excuse for the omission to pay it over; substantially a controversy and litigation between the State and the publisher.

[Burke v. Blan.]

A comparison of the different provisions of the statute, though some of them are awkwardly expressed, reasonably shows an intention to provide for payment out of the treasury of the State in two cases only—where the money is paid therein by the collector, and where the State becomes the purchaser ; the obligation resting, in one case, on the actual possession of money, required by law to be paid into the treasury, which *ex æquo et bono* belongs to the publisher ; and in the other, on the retention of the proceeds of sale, which include the price of advertising. The account of the publisher is required to be audited in two instances, which are separate and distinct, and placed in juxtaposition—"and the auditor of the State shall audit the account of such publisher for such advertisement, and where the State has become the purchaser of lands at such tax-sale." The requirement that the auditor shall audit the account "for such advertisement," immediately follows, is connected with, and relates to the provision, that the collector must collect the price of advertising the lands for sale, " and shall pay the amount collected for advertising such sales into the treasury of State." If it is intended that the provision, that the auditor shall audit the account of the publisher for such advertisement is general, and refers to and includes the price of advertising all the sales, irrespective of the provision that the amount collected shall be paid into the treasury, the special and additional provision, that the account shall also be audited when the State has become the purchaser, is superfluous, and without operation. Construing the statute so as to make the different provisions congruous, and give effect to every clause, leads to the conclusion, that the State incurs no liability for the price of advertising beyond the proper disbursement of the amount actually paid into the treasury, and where the State becomes the purchaser.

The petition further claims for advertising notices under the third section of the "act to provide for the sale of land and other real estate for delinquent taxes, and the redemption thereof."—Acts 1878–9, 1. The tenth section, after regulating the costs of the judge of probate and of the collector, provides: " Said costs, and the *cost of advertisement*, shall be paid out of the proceeds of sale, on an order by the judge of probate." The statute contemplates; that the costs of advertisement shall be included, with the other costs and charges, in the amount for which the court ascertains the State has a lien, and for the payment of which the land is condemned to be sold. The judge of probate only can properly certify the sum included in the decree, as the price of publishing the notice ; and on his order, the collector ordinarily pays the publisher out of the proceeds of sale, the exclusive fund from which the statute provides the costs shall be paid. It is insisted, that the State

[Carrington v. Richardson.]

should pay the cost of publishing the notices, because the proceedings under the statute are instituted by and on behalf of the State, and the publication is made by request of the judge of probate, on whom is devolved the duty of giving notice. The appeal should be addressed to the legislature. Without statutory authority, costs can not be adjudged against the State ; and the general statutes have no operation, where there is an express designation of the fund, from which the costs are to be paid.—*Governor v. Powell*, 23 Ala. 579. When the land is purchased by the State, the proceeds of sale do not go into the hands of the collector, but are retained in the treasury. The cost of advertising the notice, in such case, can be paid only on the warrant of the auditor.—Code, § 85. His duty, therefore, to audit the account, and draw his warrant for the amount lawfully due to the publisher, comes within the spirit and equity of the statute, though not expressly provided. But the duty does not arise, and the auditor is without authority to audit the account for publishing the notice as to the land purchased by the State, unless on the production of the order by the judge of probate required by the statute. Such order is evidence of the correctness of the items and amount of the account, and that it was included in the decree of sale, which the publisher is required to present.

On the agreed facts, the petitioner has been paid all which he is entitled to receive or claim from the State.

Reversed, and judgment will be here entered dismissing the petition.